UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| CHRISTIAN PIERSON | : | |
| --- | --- | --- |
| Plaintiff, | : | |
| V. | : | Civil No. 3:09-cv-02042 (PCD) |
| DAVID HANCOCK | : | |
| Defendant. | : | |

# RULING ON SUMMARY JUDGMENT MOTION

Defendant David Hancock moves, pursuant to Federal Rule of Civil Procedure Rule 56, for summary judgment on Plaintiff's claims under 42 U.S.C. § 1983. For the reasons stated herein, Defendant David Hancock's Motion for Summary Judgment [Doc. No. 27] is **granted**.

## I. BACKGROUND[1]

At all times relevant to Plaintiff's Complaint, Defendant was an officer in the police department of West Haven, Connecticut. (Compl. at ¶ 4.) On March 21, 2007, Defendant was dispatched to a residence on Park Street in West Haven, Connecticut, in response to a reported domestic dispute. (Pl.'s Rule 56(a)(2) Statement at ¶ 4.) Upon arriving at the location, Defendant spoke with Jennifer Teixeira ("Teixeira"), who stated that she had received two threatening text messages from Plaintiff, her former boyfriend.[2] (Id. at ¶ 5.) Teixeira informed Defendant that she

---

[1] The statement of facts that follows is derived from the Local Rule 56(c) Statements, complaint, affidavits, pleadings, exhibits and supplemental materials accompanying the Motion for Summary Judgment. Only those facts necessary to the resolution of this Motion will be discussed here.

[2] According to Plaintiff, he and Teixeira first met in 1991 and dated "on and off for nineteen years." (Pl.'s Dep. at 8: 7-14.)

had active restraining and protective orders against Plaintiff. (Id.)³ Teixeira also told Defendant Plaintiff had assaulted her in the past and that she was afraid of him. (Id. at 10.)

Teixeira subsequently signed a sworn statement in Defendant's presence, which described the threatening text messages. (Pl.'s Rule 56(a)(2) Statement at ¶ 11; Teixeira Statement, March 22, 2007.) The messages consisted of vulgar and insulting statements in which Plaintiff allegedly threatened violence in order to see Teixeira's son. (Id.) According to Teixeira's statement, as a result of the text messages, she feared Plaintiff might resort to violence to take away her son. (Id.) Both text messages contained electronic signatures bearing Plaintiff's name and number. (Pl.'s Rule 56(a)(2) Statement at ¶¶ 8-9.) Although Plaintiff testified during his deposition that Defendant showed him a Verizon phone record with the text messages bearing his electronic signature at the time of the arrest, it was later determined that Plaintiff's prepaid phone plan prohibited him from sending text messages on the relevant date. (Pl.'s Dep. at 31:7-33:12.)

The parties disagree on the manner in which Teixeira showed Defendant the text messages. While Defendant claims that Teixeira showed him the text messages on her phone, (Def.'s Rule 56(a)(2) Statement at ¶ 8), Plaintiff contends that Teixeira sent the alleged text messages from her cell phone to Defendant's cell phone (Pl.'s Rule 56(a)(2) Statement at ¶ 8).

While at Teixeira's residence, Defendant attempted to contact Plaintiff on his cell phone. (Id. at ¶ 12.) The parties disagree on the actual details of the calls. Defendant claims that he used his own cell phone to dial Plaintiff's number. (Def.'s Rule 56(a)(2) Statement at ¶ 12.)

---

³ The parties agree that on March 22, 2007, there were active restraining and protective orders in place against Plaintiff. Pl.'s Rule 56(a)(2) Statement at ¶ 6.) The orders provide that: "Respondent shall refrain from threatening, harassing, stalking, assaulting, molesting, sexually assaulting or attacking the protected person," and "Respondent shall refrain from having any contact in any manner with the protected person." (Id. at ¶ 7.) Both orders extended to Plaintiff. (Id.)

According to Defendant, a male voice answered, and when Defendant asked to speak with Plaintiff, the person responded, "Ya." (Id.) At this moment, Defendant identified himself and the person hung up. (Id.) According to Defendant, he attempted to call Plaintiff's cell phone several more times, but the calls went directly to voicemail. (Id.) Defendant claims that he then left a voicemail directing Plaintiff to contact him regarding the matter. (Id.) In contrast, according to Plaintiff, Defendant called him only once. (Pl.'s Rule 56(a)(2) Statement at ¶ 12.) He claims that he received a restricted call at midnight but was unable to answer it because his cell phone battery died. (Pl.'s Dep. at 21:21-23.)

When Defendant returned to the West Haven Police Headquarters, he used the police computer system to determine that Plaintiff lived in Waterbury, Connecticut. (Id. at ¶ 14.) Defendant contacted the Waterbury Police Department, advising them of his investigation and requested that they attempt to make contact with Plaintiff, and if possible, detain him until Defendant arrived. (Id.) Shortly thereafter, Sergeant Sampson of the Waterbury Police Department contacted Defendant and advised him that Plaintiff had been located. (Id. at ¶ 15.) Defendant responded, arrested Plaintiff, and transported him back to the West Haven Police Headquarters for processing. (Id.) At the West Haven Police Headquarters, Plaintiff denied sending any text messages to Teixeira and claimed that Teixeira's son, Jonathan, had called him. (Id. at ¶ 16.) Plaintiff offered to let Defendant examine his cell phone to prove that he did not send the text messages; however, when they turned on the phone, the low battery message appeared and the phone immediately shut off. (Id. at ¶ 17.) Plaintiff subsequently signed a sworn police statement claiming that on the evening in question he received four restricted phone calls, but when he attempted to answer the phone, he did not get a response. (Pl.'s Rule 56(a)(2)

3

Statement at ¶ 18; Pl.'s Statement, March 22, 2007.) According to Plaintiff's statement, he received a fifth phone call—this time from Jonathan Teixeira, and the two spoke briefly. (Id.) Finally, at about midnight, Plaintiff received an additional phone call, but the cell phone battery died. (Id.) The parties agree that Plaintiff never told Defendant that his cell phone was unable to send text messages, as was later revealed. (Pl.'s Rule 56(a)(2) Statement at ¶ 19.)

On March 22, 2007, Plaintiff was charged with (1) Criminal Violation of a Protective Order (C.G.S. § 53a-223); (2) Criminal Violation of a Restraining Order (C.G.S. § 53a-223b); (3) Threatening Second Degree (C.G.S. § 53a-62); and (4) Harassment Second Degree C.G.S. § 53a-183). (Def.'s Rule 56(a)(2) Statement at ¶ 13.)

On August 16, 2007, the criminal charges brought against Plaintiff as a result of this incident were nolled. (Compl. at ¶ 11.) On November 15, 2010, the Court granted Defendant's Motion to Dismiss Plaintiff's claims arising under the Eighth and Fourteenth Amendments, for excessive bail and due process violations, respectively. Defendant now moves for summary judgment regarding Plaintiff's remaining claim, arising under the Fourth Amendment, which alleges false arrest, malicious prosecution, and warrantless arrest.

II. **STANDARD**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

587 (1986). A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Importantly, however, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & Hudson Railway Co. v. Consolidated Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990). "There must be more than a "scintilla of evidence," and more than 'some metaphysical doubt as to the material facts.'" Id. (internal citations omitted).

The initial burden falls on the moving party, who is required to "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Carteret, 477 U.S. 317, 323 (1986). "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at 324); see also Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case.") If the moving party meets its burden, the burden shifts to the party opposing summary judgment to set forth "specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56(e).

In determining whether the parties have met their respective burdens, the Court draws "all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Rodriguez v. City of New York, 72 F.3d 1051, 1061

(2d Cir. 1995). However, "the non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that 'its version of the events is not wholly fanciful.'" Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)); see also Fed R. Civ. P. 56(e). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

### III. DISCUSSION

Plaintiff filed suit under 42 U.S.C. § 1983, claiming that Defendant violated his Fourth Amendment rights to be free from false arrest, malicious prosecution, and warrantless arrest when he was arrested on or about March 22, 2007. (Compl. ¶ 12.) Plaintiff alleges that Defendant knew, or should have known, that he was innocent of the charges filed against him. (Pl.'s Rule 56(a)(2) Statement at ¶ 7.) Specifically, Plaintiff asserts that following the arrest, Defendant prepared a false and misleading report regarding his investigation of Plaintiff, which was drafted for the purpose of causing excessive bail to be ordered against Plaintiff. (Id. ¶ 9.) In response, Defendant argues that Plaintiff's Fourth Amendment claims lack merit because he cannot demonstrate the absence of probable cause. (Def.'s Mem. Supp. Mot. Summ. J. at 4-5.)

In the Second Circuit, courts generally look to the law of the state in which the arrest occurred to analyze claims alleging the constitutional torts of false arrest and malicious prosecution. Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004); see also Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002) (to prevail on claim of malicious prosecution plaintiff must establish elements of claim under state law). In Connecticut, to succeed on these claims, or a violation of civil rights arising therefrom, Plaintiff must demonstrate that the underlying arrest

lacked probable cause. Beinhorn v. Saraceno, 582 A.2d 208, 210 (Conn. App. Ct. 1990) (holding that in order to prevail on a claim of false arrest, a plaintiff was required to prove that the arresting officer did not have probable cause) (citing Atlantic Richfield Co. v. Canaan Oil Co., 520 A.2d 1008, 1011 (Conn. 1987)); QSP, Inc. v. Aetna Casualty and Surety Co., 773 A.2d 906, 918-19 (Conn. 2001) (holding that in an action for malicious prosecution it is necessary for a plaintiff to prove want of probable cause). Similarly, Plaintiff's claim that the warrantless arrest was improper also requires him to demonstrate a lack of probable cause. Connecticut General Statute § 54-1f(a) authorizes police officers to arrest an individual without a warrant "when the person is taken or apprehended in the act or on the speedy information of others." "In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). Thus, if probable cause existed at the time of the arrest, Plaintiff's claims must fail.

Probable cause requires only a "probability or a substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983). Although a probable cause determination must be based on the totality of the evidence at the time of arrest, Calamia v. City of New York, 879 F.2d 1025, 1032 (2d Cir.1989), "[e]vidence is not required to rise to a significant level of trustworthiness in order to meet the probable cause standard." Connecticut v. Lewis, 717 A.2d 1140, 1156 (Conn. 1998). Moreover, "[i]t is well-settled that police officers have probable cause to arrest if they receive information from a complaining victim or other witness whom they reasonably believe to be telling the truth." Little v. City of New York, 487 F.Supp.2d 426, 439 (S.D.N.Y.2007); see also Curley v. Village of

Suffern, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity."). For all three of the Fourth Amendment claims at issue in this case, the plaintiff bears the burden at trial of proving by a preponderance of the evidence that there was not probable cause to effect the arrest. Beinhorn, 582 A.2d at 210 (citing McHale v. W.B.S. Corporation, 446 A.2d 815, 817 (Conn. 1982)); C.G.S. § 54-1f(a). Accordingly, in the instant motion, the burden falls on Plaintiff to point to specific facts showing that there is a genuine issue of material fact concerning the issue of probable cause. See Parker, 260 F.3d at 111.

In this case, Defendant Hancock clearly had probable cause to arrest Plaintiff for violating the protective and restraining orders against him and for second degree threatening and harassment.[4] On the day of the arrest, Defendant reasonably credited the information provided by Teixeira, the complaining witness, who told him that Plaintiff had sent her threatening and vulgar text messages. In addition to showing Defendant the messages bearing Plaintiff's electronic signature, Teixeira also informed Defendant that she and Plaintiff had a long and troubled personal history in which Plaintiff had abused her. As part of his investigation, Defendant learned that Teixeira held restraining and protective orders against Plaintiff. What is more, Teixeira signed a sworn statement in Defendant's presence attesting to the fact that Plaintiff sent her threatening texts. Although the parties dispute the manner in which Defendant

---

[4] A violation of the protective order requires that such an order be in place against an individual and that the person violate the order. CONN. GEN. STAT. § 53a-223. A violation of the restraining order requires in relevant part that a restraining order be in place against an individual, that there be a threat of physical force, that the person threaten the use of physical force against another, and contrary to the terms of the order, threatens or harasses another. CONN. GEN. STAT. § 53a-223b. The statute criminalizing threats to another person states in relevant part that a person is guilty of threatening when a person physically threatens another person placing them in fear of imminent serious physical injury. CONN. GEN. STAT. § 53a-62. A violation of the harassment statute includes the use of a telephone to address another person using indecent or obscene language. CONN. GEN. STAT. § 53a-183.

reviewed the text messages, this Court believes that it is inconsequential and did not create a fact that would rise to the level of causing a reasonable person to question the trustworthiness of Teixeira. As such, this Court finds that at the time of the arrest, there was no reason for Defendant to believe that Teixeira had fabricated the text messages, and Defendant had probable cause to arrest Plaintiff.

Plaintiff argues that probable cause did not exist for his arrest because Defendant relied on mistaken information—namely that Plaintiff sent Teixeira the text messages. Indeed, after the arrest, it was established that Plaintiff's pre-paid phone plan prohibited him from sending text messages. However, "probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994). Additionally, Plaintiff admits that prior to the arrest he never told Defendant that his phone was incapable of sending text messages. (Pl.'s Depos. at 33, lines 10-16.) Therefore, the fact that Defendant relied on mistaken information does not affect the existence of probable cause.

Considering the standard of probable cause in light of the duty of police officers to apprehend persons suspected of wrongdoing, it would be imprudent for this Court to declare Defendant's actions unreasonable based on a *post facto* review of the facts. Therefore, considering the facts available to the Defendant at the time of the arrest, probable cause existed and Plaintiff's claims must fail.

## IV. CONCLUSION

For the reasons stated herein, Defendant David Hancock's Motion for Summary Judgment [Doc. No. 27] is **granted**.

SO ORDERED

Dated at New Haven, Connecticut, this  24th day of June, 2011.

/s/
Peter C. Dorsey, U.S. District Court Judge
United States District Court